UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONALD R. VISSER )
)
     Plaintiff, )
vs. ) Case No.: 1:13-cv-01029-PLM
)
CARIBBEAN CRUISE LINE, INC., and ) Oral Argument Requested
ROBERT P. MITCHELL )
)
     Defendants. )
_____ )

**ROBERT MITCHELL'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
(ORAL ARGUMENT REQUESTED)**

Pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure and Local

Rule 7.2, Defendant Robert Mitchell ("Mitchell") respectfully moves to dismiss Plaintiff's First

Amended Complaint. This Court should dismiss Plaintiff's First Amended Complaint because:

(1) this Court does not have personal jurisdiction over Mitchell; (2) the Complaint does not state

a plausible claim against Mitchell for violations of the TCPA, MHSSA, MPCA; and (3) the

Complaint does not set forth any facts which would support the maintenance of this matter as a

class action.

I.     **INTRODUCTION**

On August 8, 2013, Plaintiff Donald Visser ("Plaintiff") commenced this lawsuit against

Mitchell and Caribbean Cruise Line, Inc. ("CCL") (collectively, "Defendants"). Thereafter, on

September 19, 2013, Defendants removed Plaintiff's original complaint to this Court.[1] On

September 24, 2013, Plaintiff filed the First Amended Complaint (the "Complaint").[2] The four

_____

[1]    DE 1.

[2]    *See* DE 5 (the "Complaint").

(4) count Complaint attempts to allege claims against all "Defendants" which include (1) violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.* (on behalf of "the class");[3] (2) violations of the  TCPA (on behalf of the "cellular subclass");[4] (3) violations of the Michigan Home Solicitation Act ("MHSSA"), MCL 445.111 *et seq.*;[5] and (4) violations of the Michigan Consumer Protection Act ("MPCA"), MCL 445.901 *et seq.*[6]

The Complaint alleges that "Plaintiff and Class members have been contacted on his/their personal residential and/or cellular telephone by [CCL]."[7] Plaintiff purports to challenge "Defendants' policy and practice of automatically broadcasting pre-recorded telephone solicitations offering 'free' cruises and other prizes to consumers[.]"[8] Plaintiff further alleges that Mitchell, as an officer of CCL, "caused the call to be made."[9] The Complaint includes nothing more than conclusory, boiler-plate allegations and does nothing more than recite the general language of the TCPA, MHSSA, MPCA. Indeed, these claims are asserted against *both* Defendants together and consist of undifferentiated allegations against *both* Defendants. As such, this Court should dismiss Plaintiff's Complaint.

## II.  **ARGUMENT**

### A.  **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AGAINST MITCHELL FOR LACK OF PERSONAL JURISDICTION.**

---

3.    Complaint at ¶¶30-39.

4.    Complaint at ¶¶40-45.

5.    Complaint at ¶¶46-56.

6.    Complaint at ¶¶57-61.

7.    Complaint at ¶12.

8.    Complaint at ¶1.

9.    Complaint at ¶14

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a *prima facie* showing that personal jurisdiction exists over the moving defendant.[10] The burden does not shift to the party challenging personal jurisdiction.[11] While the Court is to view the evidence in the light most favorable to the plaintiff, the plaintiff must produce *some* evidence beyond its complaint and cannot simply rely on conclusory allegations as to the Court's personal jurisdiction over a defendant.[12] The analysis of whether a federal court has personal jurisdiction over a nonresident defendant is two-fold. The Court must first determine whether the nonresident defendant is subject to the forum state's long-arm statutes, <u>and</u> then, whether the exercise of personal jurisdiction is in accordance with the Due Process Clause of the Fourteenth Amendment.[13]

Inasmuch as the Michigan long-arm statutes extend to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.[14] Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2)

---

10. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (plaintiff failed to establish prima facie case of personal jurisdiction over out-of-state defendant).

11. *See Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 978 (E.D. Mich. 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (plaintiff failed to show personal jurisdiction over the defendant)).

12. *See MLS Nat. Med. Evaluation Servs., Inc. v. Templin*, 812 F. Supp. 2d 788, 794 (E.D. Mich. 2011) (internal citations omitted) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).

13. *Templin*, 812 F. Supp. 2d at 794.

14. *Daimler AG v. Shuanghuan Auto. Co., Ltd.*, No. 2:11-cv-13588, 2013 WL 2250213, at *2 (E.D. Mich. May 22, 2013) *(citing Michigan Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (granting motion to dismiss for lack of personal jurisdiction because the defendant had insufficient contacts to satisfy the due process requirement)).

that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."[15] The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction.[16]

General jurisdiction exists if a defendant has carried on in the forum state a ***continuous and systematic part of its general business***, even if the cause of action did not arise out of the defendant's contacts with the forum.[17] The plaintiff must make a *prima facie* showing that the defendant's contacts with the forum state were not random, fortuitous, or attenuated.[18] These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities."[19] A defendant with such presence typically maintains an office in the forum state from which it conducts business activities, maintains files, holds director meetings, mails and receives correspondence, and distributes salary checks; such a defendant also typically has a banking relationship and an agent for service of process within the forum state.[20]

Michigan's long arm statue for general jurisdiction over a corporation is codified in Section 600.711 of the Michigan Compiled Laws and provides:

---

15.    *Daimler*, 2013 WL 2250213 at *2.

16.    *Daimler*, 2013 WL 2250213 at *2.

17.    *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

18.    *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985).

16.    *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

17.    *Helicopteros Nacionales,* 466 U.S. at 414.

- 4 -

The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.

(1)     Incorporation under the laws of this state;

(2)     Consent, to the extent authorized by the consent and subject to the limitations provided in section 745;

(3)     The carrying on of a continuous and systematic part of its general business within the state.[21]

General jurisdiction exists only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."[22] The plaintiff must make a prima facie showing that the defendant's contacts with the forum state were not random, fortuitous, or attenuated.[23]

Specific jurisdiction, on the other hand, requires that the plaintiff's injury have occurred within, or had some connection to, the forum state, such that the defendant purposely directed its activities at the forum state and the claim arises out of, or relates to, those activities. Michigan's long arm statue for specific jurisdiction for a corporation is codified in Section 600.715 of the Michigan Compiled Laws and provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such

---

21.     Mich. Comp. Laws Ann. § 600.711.

22.     *Moore v. I.Q. Data Int'l, Inc.,* 11-15293, 2012 WL 1712607 (E.D. Mich. May 15, 2012) (quoting *Third Nat'l Bank v. Wedge Frp., Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989) (finding that plaintiffs have not shown that the defendant did not have contacts in the state that were "continuous and systematic" to justify personal jurisdiction)).

23.     *Rudzewicz,* 471 U.S. at 475.

corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state;

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort;

(3) The ownership, use, or possession of any real or tangible personal property situated within the state;

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.[24]

The Sixth Circuit employs a three (3) step analysis for specific jurisdiction: "(1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."[25]

An assertion of personal jurisdiction, whether specific or general, is also subject to the Due Process Clause.[26] Due process requires that the defendant have sufficient minimum contacts with the forum such that the suit "does not offend 'traditional notions of fair play and substantial

---

24.      Mich. Comp. Laws Ann. § 600.715.

25.      *Moore*, 2012 WL 1712607 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (internal citations omitted) (finding that the plaintiff did not sufficiently show that the court has personal jurisdiction over the defendant)).

26.      *Neogen Corp.*, 282 F.3d at 889 (6th Cir. 2002).

justice.'"[27] Due process exists only when the defendant's conduct and connection with the forum state are such that the defendant may reasonably anticipate being hauled into court in the jurisdiction.[28] To comport with the "fair play and substantial justice" element of due process, a defendant's contacts must be more than "random, fortuitous or attenuated."[29] In determining whether the exercise of jurisdiction would be reasonable, the court must consider

> [T]he burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and the shared interest of the several States in furthering fundamental substantive social policies.[30]

Consistent with these principles, Michigan courts and the Sixth Circuit have consistently and overwhelmingly held that the use of interstate mail and telephone facilities are insufficient to satisfy due process for purposes of long-arm jurisdiction under Michigan law.[31]

Plaintiff's Complaint fails to allege sufficient facts to give rise to personal jurisdiction over Mitchell. Instead, Plaintiff simply asserts that "Defendants do business within the state of Michigan and are thus within the jurisdiction of this Court."[32] Plaintiff may not rely on

---

27. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980), quoting *Int'l Shoe*, 326 U.S. 310.

28. *Woodson*, 444 U.S. at 297.

29. *Rudzewicz*, 471 U.S. at 475.

30. *Shuanghuan Auto*, 2013 WL 2250213 at *6.

31. *See, e.g.*, *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (finding that letters, telephone calls, and three draft contracts that were sent to Michigan by nonresident "were not sufficient to subject the defendant to suit in Michigan" can offends "the traditional notions of fair play and substantial justice"); *Dow Corning Corp. v. RSI Silicon Products, LLC*, No. 10-11226-BC, 2010 WL 4723428, at *7 (E.D. Mich. Nov. 15, 2010) (finding that e-mail contacts between a nonresident were "inadequate predicate to justify subjecting an out-of-state company to personal jurisdiction in Michigan").

32. *See* DE 5, Complaint at ¶8.

conclusory allegations to show this Court's personal jurisdiction over Mitchell.[33] Rather, Plaintiff must establish, via *facts*, that personal jurisdiction exists with respect to *each* Defendant; which Plaintiff has failed to do.[34] Indeed, Plaintiff does not allege **any** facts whatsoever to establish a prima facie case of personal jurisdiction over **either** Defendant. Michigan courts and the Sixth Circuit have held that the use of telephone facilities is insufficient to satisfy due process requirements for purposes of long-arm jurisdiction under Michigan law.[35] Accordingly, any assertion by Plaintiff that personal jurisdiction exists because Plaintiff allegedly received a telephone call from "CCL and/or its agent" is insufficient to satisfy federal due process requirements.

Moreover, Plaintiff has not and cannot establish either specific or general jurisdiction. The Complaint alleges that "Defendants solicit customers within the state of Michigan by way of telemarketing or voice broadcasting."[36] Moreover, the Complaint only alleges that "… Mitchell, as an officer of [CCL], caused these calls to be made."[37] Importantly, Mitchell did not make the calls to Plaintiff as described in the Complaint.[38] Thus, specific jurisdiction does not exist as the cause of action is not related to any contacts Mitchell may have with the forum state.

---

33.    *Templin*, 812 F. Supp. 2d at 794.

34.    *See* Fed. R. Civ. P. 12(b)(2).

35.    *See*, *e.g.*, *Kerry Steel,* 106 F.3d at 151; *Dow Corning Corp.*, 2010 WL 4723428, at *7.

36.    *See* DE 5, Complaint at ¶10.

37.    Complaint at ¶14.

38.    *See* ***Exhibit A***, Declaration of Robert Mitchell at ¶12 (the "Mitchell Dec.").

Mitchell is the President of CCL.[39] He is a resident of Broward County, Florida.[40] He is not, and never has been, a resident or citizen of Michigan.[41] Mitchell has never, and currently does not, own, lease, possess, or use any real or personal property located in the State of Michigan, nor does he have any personal bank accounts located therein.[42] Moreover, Mitchell does not conduct or transact any business in the State of Michigan.[43] Mitchell has never had any contact whatsoever with Visser,[44] and Visser does not allege that he did. Plaintiff alleges no alter ego theory here, yet simply tries to lump the insufficient allegations made against CCL in order to also establish personal jurisdiction over Mitchell. Thus, it is apparent that none of the traditional "continuous and systematic" contacts establishing general jurisdiction exist as to Mitchell. Mitchell has absolutely no contact with Michigan on which to premise personal jurisdiction. In short, Plaintiff cannot use Mitchell's position as President of CCL as a basis for personal jurisdiction here.[45]

Moreover, specific jurisdiction cannot be exercised where, as here, Plaintiff's claims do not relate to Mitchell's forum state activities because Mitchell did not make the calls alleged in

---

39. Mitchell Dec. at ¶1.

40. Mitchell Dec. at ¶2.

41. Mitchell Dec. at ¶3.

42. Mitchell Dec. at ¶¶4-5.

43. Mitchell Dec. at ¶6

44. Mitchell Dec. at ¶7.

45. *Morris v. Newberry Correctional Facility*, No. 11-10938, 2013 WL 1223646, at *3 (E.D. Mich. Feb. 11, 2013) (citing *Weller v. Cromwell Oil, Co.*, 504 F.2d 927, 929 (6th Cir. 1974)) (finding that the plaintiff failed to show any personal involvement of any of the corporate officers in the underlying claim for personal jurisdiction)); *see also Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (in order to show jurisdiction over an out-of-state agent, the plaintiff must show that the agent is "actively and personally involved in the conduct giving rise to the claim" and that the "exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice").

the Complaint, and accordingly, has no reason to expect to be haled before a Michigan court.[46] Plaintiff has not even pleaded, let alone established, a need for Michigan to provide a forum in this case as Plaintiff's causes of action in no way relate to Mitchell's contact – or lack thereof – with Michigan. Certainly Mitchell is amenable to suit in Florida, whose courts can properly exercise personal jurisdiction. Moreover, the convenience of the parties weighs against litigating this case in Michigan. Mitchell is a non-resident and will be greatly inconvenienced if he is required to come to Michigan to litigate this case. Under these factual circumstances, there is no question that the exercise of personal jurisdiction over Mitchell would offend traditional notions of fair play and substantial justice. As such, the Complaint must be dismissed.

**B. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

### 1. The Complaint impermissibly lumps both Defendants together.

When a complaint involves multiple parties and multiple claims, each claim should make it clear which defendant or defendants are alleged to have committed which wrong(s). If it is impossible to tell from the face of the complaint which defendants were accused of which violations, what specific acts constituted violations, or when alleged violations occurred, such a complaint fails to state a claim upon which relief can be granted.[47] Courts have consistently found that "lumping" defendants together fails to satisfy Rule 8(a) because, in large part, a complaint employing such a technique fails entirely to assert individualized allegations as to each separate defendant.[48]

---

48. *Helicopteros*, 466 U.S. 414.

47. *See*, *e.g.*, *Benoay v. Decker*, 517 F.Supp. 490, 493 (E.D. Mich. 1981).

48. *State Farm Fire and Cas. Co. v. Allied and Associates*, 860 F.Supp.2d 432, 441 (6th Cir. 2012) (requiring that when there are multiple defendants, a claim must identify which of the defendants is being accused).

- 10 -

Pursuant to Rule 10(b), separate statements of claims may be required where there are several defendants in a single complaint.[49] Here, there are two (2) defendants, a single Complaint consisting of ten (10) pages, and four (4) "counts" against all Defendants collectively. In order to state a claim for relief, actions brought against multiple defendants must clearly specify the claims with which each particular Defendant is charged.[50] The Complaint contains no such "separation." Indeed, Plaintiff fails to differentiate between the Defendants and instead, the Complaint repeatedly groups the Defendants together in its conclusory allegations.[51] These type of allegations are exactly the kind of unadorned legal conclusions forbidden by *Twombly* and its progeny which impermissibly lump CCL and Mitchell together so that neither of the Defendants is put on notice of exactly what they did.

### 2. Plaintiff fails to state a plausible claim against Mitchell.

A motion under Rule 12(b)(6) challenges the legal sufficiency of a complaint.[52] When examining the merits of a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff.[53] While "well-pleaded" factual allegations are required to be accepted as true, the Court does not have any obligation to accept as true legal

---

[49]. *See* Fed.R.Civ.P. 10(b) (requiring "separate statements" and a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to single set of circumstances . . . [and] each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.").

[50]. 5 Wright and Miller *Federal Practice and Procedure*, § 1248, pp. 314-15; *see also Decker*, 516 F.Supp. at 493 ("Each individual must be apprised separately of the specific acts of which he is accused, especially in a case in multiple defendants.").

[51]. *See* Complaint at ¶¶9-18.

[52]. *Hupka v. U.S. Dept. of Defense*, 134 F.Supp.2d 871, 874 (6th Cir. 2001).

[53]. *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008).

- 11 -

conclusions or unwarranted factual inferences.[54] Federal Rule of Civil Procedure 8(a) sets for the basic federal pleading standard, requiring a "short and plain statement of the claim" that sufficiently notifies *each* defendant of both the claim and its supporting grounds.[55] However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."[56] Consequently, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[57] "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true."[58] In short, an actionable complaint must include "enough facts to state a claim to relief that is plausible on its face."[59]

> a. <u>Plaintiff fails to state a cause of action under the TCPA.</u>

Although Plaintiff only alleges that he received a call on his residential telephone line, he attempts to bring claims under both 47 U.S.C. § 227(b)(1)(B) (Count I) and 47 U.S.C. §227(b)(1)(A)(iii) (Count II) of the TCPA. Ignoring that Plaintiff clearly has no standing to bring Count II absent allegations that he was called by "Defendants" on his cellular telephone, each possible cause of action fails given Plaintiff's failure to state a sufficient factual basis upon

---

54. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009).

55. Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

56. *Twombly,* 127 S.Ct. at 1965 n. 3.

57. *Twombly,* 127 S.Ct. at 1964-65 (citation omitted); *see also Sensations, Inc. v. City of Grand* Rapids, 526 F.3d 291, 295 (6th Cir. 2008); *Hupka,* 134 F.Supp.2d at 875.

58. *Twombly,* 127 S.Ct. at 1965 (citations omitted).

59. *Twombly,* 127 S.Ct. at 1974; *Iqbal,* 129 S. Ct. at 1949.

15268098v1

which relief may be granted. First, Section 227(b)(1)(B) of the TCPA makes it unlawful for any

person within the United States "to *initiate* any telephone call to any **residential** telephone line

using an artificial or prerecorded voice to deliver a message without the prior express consent of

the called party..."[60]  Second, 47 U.S.C. §227(b)(1)(A)(iii) makes it unlawful to "*make* any call

using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any …

cellular telephone service[.]"[61]

     While neither the statute nor the regulations prescribed thereunder have defined the

words "make" or "initiate", courts addressing the meaning of the terminology used by Congress

in the TCPA have agreed that direct liability can only exist against the actual *"maker"* of the

call(s) at issue.[62] Under Subsection 227(b), sufficient allegations of "direction" and "control"

must be provided. In order to satisfy his pleading requirements and state a cause of action against

---

[60].     47 U.S.C. § 227(b)(1)(B).

[61].     47 U.S.C. §227(B)(1)(A)(iii).

[62].     *See Hurst v. Mauger*, Case No. 11-C-8400, 2013 WL 1686842 (N.D. Ill. April 16, 2013); *Bridgeview Health Care Center Ltd. v. Clark*, Case No. 09-C-5601, 2013 WL 1154206 (N.D. Ill. March 19, 2013); *Zerson v. PT Ins. Group*, No. 11 C 7919, 2012 WL 5936286 (N.D. Ill. Nov. 27, 2012) (analyzing a junk fax TCPA claim pursuant to § 227(b)(1)(C) and refusing to impose liability on the entity that did not send the alleged violative fax despite paying a third party to send the fax on its behalf); *Mey v. Pinnacle Security, LLC*, Civil Action No. 5:11CV47, 2012 WL 4009718, *4 (N.D. W. Va. Sep. 12, 2012) (finding that Section 227(b)(3) imposes liability only on the "maker" of the call); *Thomas v. Taco Bell Corp.*, SACV 09-01097-CJC, 2012 WL 3047351 at * 4 (C.D. Cal. June 25, 2012); *Ashland Hosp. Corp. v. International Brotherhood of Electrical Workers Local 575*, 807 F. Supp. 2d 633 (E.D. Ky. 2011) (dismissing a complaint brought against an entity that did not make the alleged violative calls); *Zhu v. Dish Network, LLC*, 808 F.Supp.2d 815 (E.D. Va. 2011) (concluding that the VTPPA did not impose liability on the provider whose independently controlled telemarketers violated the statute); *Charvart v. Echostar Satellite, LLC*, 676 F. Supp. 2d 668 (S.D. Ohio 2009) *appeal pending*, 630 F.3d 459 (2010); *Lary v. VSB Financial Consulting, Inc.*, 910 So. 2d 1280 (Ala. Civ. App. 2005) (concluding that liability may be affixed upon a person who "makes" a telephone call or "uses" a fax machine and refusing to impose liability upon a company's promoter where there was no evidence of direct involvement in the decision to send, or in the sending of, the allegedly prohibited facsimiles).

- 13 -

Mitchell for purported violations of the TCPA, Plaintiff must establish that Mitchell either (1) failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or (2) that he authorized or personally engaged in conduct that clearly violated the TCPA."[63] In *Mais*, Jack W. Brown ("Brown") was named a defendant in a putative TCPA class action. Brown was allegedly the "vice president and 20% owner" of the corporate defendant, had in the course of his work-related responsibilities authorized the use of an automatic telephone dialer, and failed to ensure the Defendant had policies in place to protect against potential violations of the TCPA.[64]

In issuing a summary judgment in Brown's favor, the Court noted that "[w]hile several cases . . . have found corporate officers may be individually liable under the TCPA, those decisions have all required the ***direct commission or authorization of wrongful acts*** by the corporate officer."[65] Applying that standard, the *Mais* court held that "'[w]hile Brown is the person who allegedly 'authorized the use of Gulf Coast's dialer,' . . . there is no evidence of plainly violative conduct by Brown personally; indeed, there is no evidence that he had anything personally to do with the calls made to Plaintiff or any putative class member."[66]

Here, the Complaint does not allege that Mitchell directly committed or authorized the telephone calls to Plaintiff and the putative class members. The bottom line is that Mitchell did not make or otherwise authorize any of the calls described in the Complaint – and Plaintiff makes no plausible allegations in this regard. Plaintiff conclusorily asserts that "Defendants

---

63. *See Mais v. Gulf Coast Collection Bureau, Inc.*, Case No. No. 11–61936–Civ–Scola, 2013 WL 1899616, --- F.Supp.2d ---- (S.D. Fla. May 8, 2013)

64. *Id.* at *4.

65. *Id.*

66. *Id.*

- 14 -

made, or caused to be made, telephone calls to Plaintiff and Class members using an artificial or prerecorded voice to Plaintiff at his residential number in violation of the TCPA."[67] Conspicuously missing from these allegations are any further details about these purported "calls;" including the date, time, length, and content thereof. Legal conclusions will not suffice to state a plausible claim for relief, yet here, that is all Plaintiff provides.[68] Plaintiff must provide *facts*, which he has blatantly failed to do and cannot do, as no such facts exist.

In addition to the fact Mitchell did not make or directly authorize the calls at issue, Plaintiff's Complaint similarly fails to plead any facts that Mitchell or CCL used "automatic dialing technology and/or an artificial or prerecorded voice." Section 227(a)(1) states:

(a) Definitions

As used in this section –

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.[69]

"As an isolated assertion, it is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.' Such a naked assertion need not be taken as true."[70] While the court in *Knutson* acknowledged that "it may be difficult for a plaintiff

---

67.    *See* DE 5, Complaint at ¶ 34.

68.    *Iqbal* 129 S. Ct. at 1949-40.

69.    47 U.S.C. § 227(a)(1).

70.    *Knutson*, 2011 WL 291076 at *2 (quoting *Kramer v. Autobytel, Inc.*, 2010 U.S. Dist. LEXIS 137257 at *12-13 (N.D. Cal. Dec. 29, 2010)).

to know the type of calling system used without the benefit of discovery," it nonetheless held that the plaintiffs' conclusory allegations required dismissal. Conversely, in *Kramer*, the complaint contained factual allegations about the call itself to otherwise infer the use of an automatic system.[71] In this case, however, Plaintiff's Complaint provides insufficient detail about the calls allegedly made by "Defendants" to even allow this Court to infer that the calls fall within the definition of an "automatic telephone dialing system." As such, Plaintiff fails to state a cause of action under the TCPA and the Complaint must be dismissed.

> b. Plaintiff fails to state a cause of action under Michigan state law.

The MPCA prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."[72] "Claims under the MPCA for fraud or mistake must state the circumstances with particularity."[73] Indeed, the provisions of the MCPA are to be construed with reference to the common-law tort of fraud."[74] To establish a claim for fraud or misrepresentation, a plaintiff must establish: "(1) that the defendant made a material misrepresentation that was false; (2) the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; (3) that the plaintiff acted in reliance upon it; and (4) resulting damages."[75] A material fact in the context of MCPA is "one that is important to the

---

[71]. *Kramer*, 2010 U.S. Dist. LEXIS 137257 at *13.

[72]. *Lipov v. Louisiana-Pacific Corp.*, No. 1:12-cv-439, 2013 WL 3805673, at *4 (W.D. Mich. July 22, 2013) (citing Mich. Comp. Laws §445.903(1)) (granting defendants motion to dismiss, in part, for failing to state a claim under TCPA).

[73]. *Lipov*, 2013 WL 3805673 at *4 (W.D. Mich. July 22, 2013); *Michels v. Monaco Coach Corp.*, 298 F.Supp.2d 642, 650 (E.D.Mich.2003) (citing Fed. R. Civ. P. 9(b)).

[74]. *In re OnStar Contract Litigation*, 278 F.R.D. 352, 376 (E.D. Mich. 2011)

[75]. *In re OnStar Contract Litigation*, 278 F.R.D. at 376.

transaction or affects the consumer's decision to enter into the transaction."[76] Accordingly, Plaintiff must allege with particularity the who, what, when, where, and how of the alleged fraud or misrepresentation.[77]

Further, under the MHSSA, "a home solicitation sale shall not be made by telephonic solicitation using in whole or in part a recorded message."[78] Moreover, MHSSA requires that "at the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request."[79] Indeed, under MHSSA, a natural person must be available to answer the telephone number at any time when telephone solicitations are being made.[80]

Here, Plaintiff makes no effort to even plead the elements of these statutes against Mitchell, much less plead his causes of action with particularity. It is not enough to simply quote the statutes and make the legal conclusion that "Defendants" committed such acts. For example, Plaintiff alleges the following:

- Defendants made, or caused to be made, telephone solicitations to Plaintiff and the Michigan Subclass which consisted of a recorded message, violating the MHSSA.[81]

---

76.    *Zine v. Chrysler Corp.,* 236 Mich.App. 261, 283 (Mich.App 1999).

77.    *See, e.g., MacDonald v. Thomas M. Cooley Law Sch.*, 880 F. Supp. 2d 785, 794 (W.D. Mich. 2012) *aff'd*, 724 F.3d 654 (6th Cir. 2013).

78.    Mich. Comp. Laws Ann. § 445.111.

79.    Mich. Comp. Laws Ann. § 445.111b(1).

80.    Mich. Comp. Laws Ann. § 445.111b(1).

81.    Complaint at ¶49.

- 17 -

- Defendants offered prizes such as a "free cruise" to Plaintiff and members of the Michigan Subclass for which a payment was later demanded as necessary to receive the prize;[82]

- Defendants failed … to comply with MCL 445.11a and MCL 445.111b and MCL 44511c(1)(e) [sic];[83]

- The telephone solicitations made by Defendants to Plaintiff and members of the Michigan Subclass constitute violations of the [MCPA].[84]

These are exactly the type of "blanket assertions" which are not entitled to relief under *Twombly* and its progeny.[85] Such allegations are not enough to satisfy Rule 8(a), and are woefully deficient for the specificity required under Rule 9(b).[86]

Plaintiff fails to describe any of the required MCPA or MHSSA elements with any particularity whatsoever. For instance, Plaintiff fails to even *mention* that Mitchell intended Plaintiff rely on the alleged deception. In addition, the sole damages Plaintiff alleges in his causes of action are statutory.[87] Plaintiff's statements, which merely allege that damages were caused by the "Defendants," are not particular, specific, and/or actual, as is required by Michigan law.[88] Therefore, as Plaintiff fails to set forth sufficient facts to recover under the MCPA or MHSSA, the Court must dismiss Counts III and IV.

---

82.     Complaint at ¶53.

83.     Complaint at ¶55.

84.     Complaint at ¶58.

85.     *Twombly,* 127 S.Ct. at 1965 n. 3.

86.     *See* Fed.R.Civ.P. 9(b).

87.     Compl. ¶¶56, 61.

88.     *See MacDonald*, 880 F. Supp. 2d at 794; *Groves v. Dep't of Corrections*, 295 Mich.App. 1, 8, 811 N.W.2d 563 (2011); *see also* Fed. R. Civ. P. 9(b), MCR 2.112(B).

### C. PLAINTIFF'S CLASS ACTION ALLEGATIONS ARE NOT PLAUSIBLE AND MUST BE DISMISSED.

Despite his inability to state a plausible claim for relief under any theory asserted, Plaintiff seeks to represent a putative nationwide class and two (2) subclasses consisting of:

> All persons residing in any of the United States that are holders of residential telephone numbers to which a pre-recorded and/or artificial call or message was received on behalf of Defendants advertising or promoting the goods or services of the Defendants without the prior express consent of the holder (the "Class").[89] [and]

> All members of the Class who received the complained of call or message at their cellular telephone numbers (the "Cellular Subclass").[90] [and]

> All members of the Class who reside in the State of Michigan (the "Michigan Subclass").[91]

It is not clear how Plaintiff, who only alleges that he received a call to his residential telephone, can properly serve as a class representative for the "Cellular Subclass," or how Plaintiff could even remotely have standing to bring this claim. As described in further detail *supra*, there is different statutory language involved between the residential and cellular classes, and as such, differing claims and proof involved. Moreover, Plaintiff's Complaint, barely contains a "bare recitation" of the elements of a class action. "Mere repetition of the language of Rule 23(a) is not sufficient" and "[t]here must be an adequate statement of the basic *fact[s]* to indicate that each

---

89.     Compl. ¶19.

90.     Compl. ¶20.

91.     Compl. ¶21.

requirement of the Rule is fulfilled."[92] The burden is on the plaintiff, the party seeking to utilize the class action device, to establish his right to do so.[93]

Class action allegations are subject to the same Rule 12(b)(6) standards.[94] Thus, as a preliminary matter, Plaintiff must plead ultimate facts to satisfy all four of the prerequisites contained in Rule 23(a),[95] as well as one of the subcategories of Rule 23(b). The Complaint contains *no facts* to support the conclusory class allegations. Indeed, the Complaint does not even bother to plead numerosity.[96] Further, by way of example only, the Complaint conclusorily states that the "Plaintiff's claims are typical of the class of all class members" and that "common questions of law and fact apply to the claims of all class members."[97] These conclusions are not supported by fact(s) and thus, dismissal is required.

---

92.    *Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir. 1974).

93.    *Senter v. General Motors Corp.,* 532 F. 2d 511, 522 (6th Cir. 1976).

94.    *See, e.g.,In re Iowa Ready Mix Concrete Antitrust Litigation,* 768 F. Supp. 2d 961, 974-76 (N.D. Iowa 2011) (granting motion to dismiss where proposed class action lawsuit contained nothing more than conclusory class action allegations).

95.    Federal Rule of Civil Procedure 23(a) requires the following prerequisites to maintain a class action: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a).  In addition, an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and: (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed.R.Civ.P. 23(b).

96.    *See* Fed.R.Civ.P. 23(a)(1).

97.    Compl. ¶¶24, 25.

In addition, the proposed class is far too broad and would require an inordinate number of individualized determinations to ascertain class membership. Although not properly pleaded, Plaintiff seems to be alleging that Mitchell's purported conduct was "knowing" and "willful." Justifiably, class relief is generally rejected in claims such as these, as the inquiries are highly individualized and specific facts for each putative class member necessarily differs, especially as to matters of proof and reliance. Adjudicating these claims would necessarily require a mini-hearing for each possible class member. Determining class membership, therefore, would devolve into a series of fact-finding hearings that would effectively render the case unmanageable.[98]

Indeed, the Supreme Court recently rejected a class action based on a purported violation of a statute in *Wal-Mart Stores, Inc. v. Dukes.*[99] In *Dukes,* the Supreme Court ruled that the plaintiff must show that class members "have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law."[100] The required inquiries here would rely upon highly individualized and specific facts that would differ for each person. Indeed, as mentioned above, Plaintiff did not even plead any specific and/or actual damages with any particularity, and it would be even more difficult for an entire class of people that may have suffered different types of injuries. Thus, a mini-hearing for each putative class member would be needed.[101]

---

98.    *See Comcast Corp. et al. v. Behrend et al.*, No. 11-864, 133 S.Ct. 1426, 1432 (March 27, 2013).

99.    131 S.Ct. 2541, 2011 WL 2437013 at *7 (U.S. 2011).

100.    *Id.*

101.    *Comcast*, 133 S.Ct. at 1435.

- 21 -

Plaintiff further fails to identify common questions of law or fact of the purported class sufficient to meet the commonality element. Indeed, Plaintiff offers several questions that pertain only to the general activity of Mitchell and CCL, but which have nothing to do with the class members' alleged injuries. These questions do not even discuss the relevant statutes or what type of proof would be required. Further, not one of these questions relates in any way to demonstrating that each potential class member has suffered any injury, let alone that each has suffered the *same* injury. The Supreme Court noted in *Dukes* that what matters to class certification is not simply the raising of common questions, "but rather, the capacity to generate *common answers* apt to drive the resolution of the litigation."[102]

The answers to Plaintiff's questions have only to do with the alleged violation of particular statutes; they have nothing to do with the individual class members' commonality.  For example, under the MCPA, Plaintiff and class members must allege individualized and particular allegations of fraud to even state a claim.[103] Such particularized allegations and inquiry regarding fraud are incompatible with class certification under *Dukes*. Further, the TCPA requires an individualized showing with respect to each purported class member as to whether consent was provided.[104] Moreover, class certification in TCPA cases is difficult to obtain, particularly where

---

[102]    *Dukes*, 131 S.Ct. at 2551.

[103]    *See MacDonald*, 880 F. Supp. 2d at 794; *Groves v. Dep't of Corrections*, 295 Mich.App. 1, 8, 811 N.W.2d 563 (2011); *see also* Fed. R. Civ. P. 9(b), MCR 2.112(B);.

[104]    *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) ("recipient failed to show how issue of individual consent, whether established as affirmative defense or as element of the cause of action, could be established via class-wide proof of claim, as evidence showed that advertiser collected recipients' fax numbers over time and from variety of sources, and that it obtained prior express invitation or permission from some recipients, so that individual inquiries were needed to sort out which transmissions were consented to and which were not"); *see also G.M. Sign, Inc. v. Brink's Mfg. Co*., No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) (denying plaintiffs' motion for class certification on TCPA claim because class

- 22 -

"consent" will be an issue, which will certainly be the case here, where Plaintiff has not even plead that CCL and/or Mitchell did not obtain express consent.[105] In *Gene and Gene*, the Fifth Circuit Court of Appeals held that the "plaintiff must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced."[106]   Here, however, Plaintiff has not advanced any theory employing generalized proof to establish liability, let alone a *viable* theory. Importantly, post *Comcast*, Plaintiff must establish that damages can be measured on a classwide, rather than an individual basis.[107]

Plaintiff apparently invokes Rule 23(b)(2) and Rule 23(b)(3) as the proposed structure of the classes he seeks to certify but provides no facts to support that construction. As explained above, common issues of fact or law do not predominate here, and no class action can plausibly be stated. Likewise, a class action is simply not the superior (or only) mechanism for resolving the issues involved in this lawsuit. Accordingly, as Plaintiff has failed to provide any facts in support of its argument for class certification, Plaintiff's class allegations cannot be certified and must be denied.

---

definition would require several mini trials to determine whether there was a prior business relationship between each class member and defendant).

105.    *See, e.g., Forman v. Data Transfer*, 164 F.R.D. 400 (E.D. Pa. 1995); *Gene and Gene*, 541 F.3d 318.

106.    *Gene and Gene*, 541 F.3d at 328.

107.    Theses are the sorts of inquiries that the Supreme Court has now made obligatory through *Comcast Corp. v. Behrend*, *supra*. This "analysis will frequently entail overlap with the merits of the plaintiff's underlying claim ... because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." 133 S.Ct. at 1432 (citations and internal quotation marks omitted); *see also Dukes*, 131 S.Ct. at 2551.

- 23 -

**III.**     <u>**CONCLUSION**</u>

Because (1) this Court does not have personal jurisdiction over Mitchell; (2) the Complaint does not state a plausible claim for violation of the MHSSA, TCPA, or MPCA against Mitchell; and (3) the Complaint does not set forth any facts which would support the maintenance of this matter as a class action, the Complaint must be dismissed.

<u>**ATTEMPT TO OBTAIN CONCURRENCE**</u>

Pursuant to Local Rule 7.1, Counsel for Defendant has communicated extensively via electronic mail with Donovan Visser, counsel for Plaintiff, in the effort to resolve the issues raised herein. The parties have not been able to come to a resolution.

15268098v1

DATED: October 8, 2013

/s/ Richard W. Epstein
Richard W. Epstein
Fla. Bar No. 229091
GREENSPOON MARDER, P.A.
200 East Broward Blvd., Suite 1500
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
richard.epstein@gmlaw.com

-and-

Charles F. Behler
Michigan Bar No. P10632
SMITH HAUGHEY RICE & ROEGGE PC
100 Monroe Center Street NW
Grand Rapids, MI 49503
(616) 458-6245 (Telephone)
(616) 774-2461 (Facsimile)
cbehler@shrr.com

*Attorneys for Robert Mitchell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October, 2013, I electronically filed the foregoing utilizing the Court's CM/ECF system on Counsel for Plaintiff:

Donovan J. Visser
Visser & Associates, PLLC
2480 – 44th Street, S.E., Suite 150
Kentwood, MI 49512
*Counsel for Plaintiff*

/s/ Richard W. Epstein
RICHARD W. EPSTEIN