UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD VISSER, *et al.*,

        Plaintiffs,

                                 File No. 1:13-CV-1029

v.

                                 HON. PAUL L. MALONEY

CARIBBEAN CRUISE LINE, INC., *et al.*,

        Defendants.

                                /

## OPINION

      This is an action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* and the Michigan Home Solicitation Sales Act (MHSSA), Mich. Comp. Laws § 445.111 *et seq.*  Before the Court are three motions to dismiss the third amended complaint, one by Defendant Caribbean Cruise Line, Inc. ("CCL"), one by Defendant Consolidated Travel Holdings Group, Inc. ("CTH"), and one by Defendant Daniel Lambert.  (ECF Nos. 126, 129, 183.)  For the reasons herein, the Court will grant the motions to dismiss by Defendants Lambert and CTH, but will deny CCL's motion.

### I.  Background

      Plaintiffs are Donald Visser, Robert Hossfeld, Marie Hossfeld, and Ben Johnson.  Donald Visser is a Michigan resident.  Robert Hossfeld and Marie Hossfeld are currently Texas residents.  Ben Johnson is currently a Wisconsin resident.  Defendants CCL and CTH are corporations based in Florida.  Defendant Lambert, who resides in Florida, is an "officer or director" of CTH and an alleged "agent" of CCL.  (3d Am. Compl. ¶ 14, ECF No. 110.)

Plaintiffs allege that Defendants sell Caribbean cruises and other goods and services via telemarketing.  Plaintiffs allegedly received calls on their cellular telephones "by, on behalf of, or for the benefit of Defendants on one or more occasions."  (*Id.* ¶ 23.)  Defendants made the calls using an "automatic telephone dialing system" and an "artificial or prerecorded voice."  (*Id.* ¶¶ 27-28.)

The complaint, which does not have any exhibits or attachments, does not provide much detail about the content of the calls, other than the fact that they "offered a prize promotion in which a purchase or payment was necessary to obtain the prize," and they "failed to state at the beginning of the telephone solicitation the name of the person making the call and the full name of the organization or other person on whose behalf the call was initiated."  (*Id.* ¶¶ 29-30.)  Additional details can be gleaned from other documents filed in this case.

Plaintiff Visser apparently received a call on May 16, 2013, from a person identifying himself as "Joey from Photo Travel."  (5/16/2013 Call Tr., ECF No. 8-5, PageID.191.)  The caller told Plaintiff that he had won a "free all-inclusive cruise to the Caribbean" and asked him if he would like to claim it.  (*Id.*, PageID.192.)  After some discussion, the caller offered to transfer Visser to an "agent" to answer further questions.  Visser agreed, and the caller transferred him to a person responding as "Caribbean Cruise Line."  (*Id.*, PageID.193.)  The person at Caribbean Cruise Line answered some of Plaintiff's questions and provided details about the cruise.  Visser told this person that he had been illegally solicited using "robo dialing" or "automatic dialing."  (*Id.*, PageID.198.)  The call ended after Visser asked for the name of the company that had called him.  (*Id.*, PageID.198-199.)

Visser received another call on October 10, 2013.  This time, a prerecorded message informed him that he was "going to the Bahamas on a free, 2-night Bahama's cruise courtesy of

2

Caribbean Cruise Lines." (10/10/2013 Call Tr., ECF No. 9-1, PageID.203.) The recording told him to "Press 1" for more details, and then put him on hold to speak with a "Caribbean Cruise Line representative." (*Id.*)

Plaintiffs Marie Hossfeld and Ben Johnson received telephone calls that started with the sound of a loud noise or fog horn, and then announced that they had won a free cruise. (M. Hossfeld Dep. 67-68, ECF No. 178-7.) Johnson received his calls between July 2013 and April 2014.[1] (Johnson Dep. 11, 16, ECF No. 178-8.) Hossfeld received hers in 2014. That same year, Plaintiff Robert Hossfeld received calls to his cellular phone from individuals offering complimentary cruises; after he expressed interest in the cruises, the callers transferred him to a representative of Caribbean Cruise Line. (R. Hossfeld Dep. 10-11, ECF No. 178-6; Hossfeld Call Trs., ECF Nos. 178-4, 178-5.)

Plaintiffs allege that they did not have an existing business relationship with Defendants. Plaintiffs claim that the calls violated the TCPA and the MHSSA. Plaintiffs contend that Defendants are liable because they "made" these calls or "caused [them] to be made." (3d Am. Compl. ¶ 57.)

## II. Standards

### A. Dismissal for Lack of Personal Jurisdiction

The Court has three options for ruling on a motion to dismiss for lack of personal jurisdiction. It may: (1) "decide the motion upon the affidavits alone"; (2) "permit discovery in aid of deciding the motion"; or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "The court has

---

[1] Johnson has lived in several states, but he received calls to a Michigan number. (Johnson Dep., ECF No. 195-14, PageID.4513.)

discretion to select which method it will follow, . . . . However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal." *Id.* Where, as here, the court considers only the parties' written submissions, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists." *Id.* The burden of making such a showing is "relatively slight." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). It is met by "'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Calif. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

When making a *prima facie* case, the plaintiff cannot "rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise[,] . . . specific facts showing the court has jurisdiction.'" *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). The Court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Id.* The Court may also accept as true uncontroverted factual assertions of the defendant, provided they are "consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

In a federal-question case like this one, personal jurisdiction exists if the defendant would be subject to personal jurisdiction under the forum state's long-arm statute and if "'exercise of personal jurisdiction would not deny the defendant[ ] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Due process concerns are governed by the standard articulated in *International Shoe* and its progeny: ensuring that a defendant has "certain minimum

contacts with [the forum state] such that maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The Sixth Circuit has distilled the

due process requirements into the following criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the
> forum state or causing a consequence in the forum state.  Second, the cause of action
> must arise from the defendant's activities there.  Finally, the acts of the defendant
> or consequences caused by the defendant must have a substantial enough
> connection with the forum state to make the exercise of jurisdiction over the
> defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### B.  Dismissal for Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a

complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  Defendant Lambert

### A.  Personal Jurisdiction

Defendant Lambert argues that the Court lacks personal jurisdiction over him.  Personal jurisdiction may be general or limited.  "General jurisdiction . . . enables a court in Michigan to exercise jurisdiction over a [defendant] regardless of whether the claim at issue is related to [the defendant's] activities in the state or has an in-state effect," whereas "[l]imited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect."  *Neogen Corp.*, 282 F.3d at 888.

Plaintiffs do not argue that the Court has general jurisdiction over Lambert.  Instead, Plaintiffs argue that the Court can exercise limited jurisdiction over Lambert due to his contacts with Michigan in connection with the conduct alleged in this lawsuit.  (*See* Pls.' Resp. in Opp'n to Def.'s Mot. 7, ECF No. 195.)

For limited personal jurisdiction over individuals, Michigan's long-arm statute provides, in relevant part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

Mich. Comp. Laws § 600.705.

To demonstrate jurisdiction over Lambert, Plaintiffs cannot rely solely upon the Court's jurisdiction over any corporations of which Lambert is an officer.  *See Weller*, 504 F.2d at 929 ("It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation.").  Instead, Plaintiffs must demonstrate that Lambert was "actively and personally involved in the conduct giving rise to the claim[.]"  *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000).  This action arises out of telephone calls to Plaintiffs.  Accordingly, to satisfy the requirements for limited personal jurisdiction, Plaintiffs must make a *prima facie* showing that Lambert caused or was somehow involved in those telephone calls.

Plaintiffs make the following allegations pertinent to the exercise of personal jurisdiction over Lambert:

4. Defendants[2] made, or caused to be made on their behalf, telephone calls to each Plaintiff's cellular telephone as well as to the cellular telephones of similarly situated individuals in violation of the TCPA.

5. Defendants made, or caused to be made on their behalf, telephone calls to Plaintiffs', Donald R. Visser and Ben Johnson, cellular telephones, as well as to the cellular telephones of similarly situated individuals in violation of the MHSSA.

. . .

7. Venue in this jurisdiction is proper because Defendants do business here and a significant portion of the events took place here.

. . .

12. Defendant Caribbean Cruise Line, Inc. is a Florida Corporation, with a principal place of business in Fort Lauderdale, Florida.

13. Defendant Consolidated Travel Holdings Group, Inc. is a Florida Corporation, with a principal place of business in Fort Lauderdale, Florida.

---

[2] The term "Defendants" apparently refers to Lambert as well as CCL and CTH.

14. Defendant Daniel Lambert is an officer or director of Consolidated Travel Holdings Group, Inc. and an agent for Caribbean Cruise Line, Inc.

. . .

16. Defendants do business within the state of Michigan and are thus within the jurisdiction of this Court.

17. Defendants sell, on their own behalf and through affiliates and agents, Caribbean cruises as well as other goods and services.

18. Defendants solicit customers throughout the United States and within the state of Michigan by way of telemarketing or voice broadcasting.

19. Defendants employ or contract with agents to perform outbound telephone solicitations on their behalf or for their benefit.

21. Defendants contract for and benefit from the actions undertaken by Defendants' vendors and agents.

22. Defendants are liable for the actions of their agents.

23. Plaintiffs and Class members received calls on their cellular telephones by, on behalf of, or for the benefit of Defendants on one or more occasions.

24. Defendants caused the calls referenced in the preceding paragraphs to be made.

25. The calls referenced in the preceding paragraphs were initiated by Defendants directly or through Defendants' agents.

. . .

32. The calls referenced in the preceding paragraphs were made on behalf of Consolidated Travel Holdings Group, Inc. or Caribbean Cruise Line, Inc.

. . .

34. Consolidated Travel Holdings Group, Inc., and CCL are affiliated with one another.

35. Upon information and belief, Consolidated Travel Holdings Group, Inc. and CCL share at least some common ownership and control.

36. Upon information and belief, Daniel Lambert has an ownership interest in both Defendants, Caribbean Cruise Line, Inc. and Consolidated Travel Holdings Group, Inc.

37. Daniel Lambert has the apparent authority, actual authority, or authority-in-fact to act as an agent for, and to bind Caribbean Cruise Line, Inc. and Consolidated Travel Holdings Group, Inc.

38. Upon information and belief Daniel Lambert caused the calls referenced in the preceding paragraphs to be made on behalf of Caribbean Cruise Line, Inc. or Consolidated Travel Holdings Group, Inc.

(3d Am. Compl., ECF No. 110.)

In summary, Plaintiffs allege that Lambert is an officer or director of CTH, an agent of CCL, and he has an ownership interest in both CTH and CCL. In addition, Lambert allegedly "made" or "caused" the telephone calls giving rise to this lawsuit, while acting on behalf of either CCL or CTH. (*Id.*)

Lambert responds in an affidavit that he is a resident of Florida and does not conduct any business in Michigan. (Lambert Decl., ECF No. 184.) He did not place or direct anyone to place any of the telephone calls at issue in the case. (*Id.*)

Plaintiffs' allegations about Lambert are very similar to those that Plaintiffs made about Defendant Robert Mitchell in Plaintiffs' first amended complaint. Plaintiffs alleged that Mitchell was an officer of CCL and that he "caused" the calls at issue. (*See* 1st Am. Compl. ¶ 14, ECF No. 5.) The Court held that these allegations were insufficient for this Court to exercise personal jurisdiction over Mitchell and, in the alternative, the allegations failed to state a claim against Mitchell. (*See* 4/4/2014 Op. & Order, ECF No. 21, PageID.352.) Plaintiffs provided no factual support for their assertion that Mitchell "caused" the telephone calls to Plaintiffs. Their "conclusory allegation" of causation was lacking in sufficient detail for the Court to accept it as true for purposes of establishing a *prima facie* case of personal jurisdiction, or for purposes of stating a claim. (*Id.*, PageID.338, 350.)

Plaintiffs' allegations about Defendant Lambert are deficient for similar reasons. Plaintiffs provide no allegations of fact to support their assertion that Lambert, as opposed to CCL (the

business offering the cruises), caused the telephone calls to Plaintiffs.  Plaintiffs have simply alleged a conclusory statement about Lambert's personal responsibility for the calls.  Thus, Plaintiffs' allegations in the complaint, standing alone, are not sufficient to establish with "reasonable particularity" any contacts between Lambert and the State of Michigan, *see Neogen Corp.*, 282 F.3d at 887, let alone contacts that satisfy Michigan's long-arm statute and due process.

> In response to Lambert's motion, Plaintiffs contend that he
>
> exercises control over CCL, its affiliates, it[s] agents, and all aspects of CCL's marketing campaigns, including negotiating and executing contracts with lead generators, approving payments to lead generators, approval of scripts utilized by lead generators, performance benchmarking and metrics and dealing with consumer complaints related to TCPA violations.

(Pls.' Resp. in Opp'n to Def. Lambert's Mot. to Dismiss 14, ECF No. 195.)  Plaintiffs have provided some evidence to support these assertions, but their evidence, together with the allegations in the complaint, fall short of demonstrating a *prima facie* case.

Start with the agreements signed by Lambert.  He apparently signed marketing agreements on behalf of "Consolidated Travel, Inc.," "Consolidated Travel, LLC," and "Caribbean Cruise Line, LLC."  (*See* Agreements, ECF No. 196, PageID.4639, 4642, 4646, 4653, 4658, 4659, 4662, 4664, 4668, 4670.)  However, Plaintiffs do not indicate how these agreements are relevant to their cause of action.  Indeed, although the foregoing entities have names similar to CCL and CTH, none of them are alleged to be responsible for the telephone calls at issue.  Furthermore, the claims in this case do not arise from any of the foregoing agreements, and Lambert himself was not a party to them.  These facts distinguish this case from one cited by Plaintiffs, *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982).  In *National Can Corp.*, the individual signatories to guaranty agreements were subject to personal jurisdiction because, among other things, the guaranty agreements were "the basis for the action."  *Id.* at 1138.  In contrast, Plaintiffs'

claims are based on telephone calls, not on any agreements that Lambert signed or to which he was a party.

Plaintiffs also rely on Lambert's position and apparent control over CCL and other entities related to it.  For instance, CCL's marketing director, Jennifer Poole, testified that Lambert was her "boss" and was the CEO of Caribbean Cruise Line, LLC.  (*See* 2015 Poole Dep. 82, 164-65.)[3] In addition, Lambert states that he is an owner and operator of Vacation Ownership Marketing Tours, Inc. ("VOMT"), which is a "timeshare tour lead broker" based in Florida (Lambert Decl., ECF 198-6, PaveID.4884).  For at least part of the relevant time period, VOMT had an agreement with CCL to "acquire potential prospects for timeshare tours." (*Id.*)  It is not clear how either of these entities is related to the telephone calls at issue in this action, as Plaintiffs do not allege any facts about VOMT or Caribbean Cruise Line, LLC.  Moreover, Lambert's roles at those organizations do not suffice to bring him within the scope of this Court's jurisdiction.  Even assuming that Caribbean Cruise Line, LLC is functionally the same entity as CCL, it does not necessarily follow that, as CEO or supervisor, Lambert was "actively and personally involved" in every action taken by the company.  *See Balance Dynamics*, 204 F.3d at 698.

Plaintiffs also contend that Lambert approved scripts that were used to sell CCL's products. Poole testified that Lambert approved at least one script for a marketing campaign by CCL.  (2015 Poole Dep. 278.)  However, Poole also testified that *she* approved scripts for other marketing campaigns, including the one used by Vatara Marketing in May 2013 to advertise CCL's cruise offer.  (*Id.* at 224-25.)  Apparently, Vatara would speak with potential customers about the offer and then transfer interested customers to CCL.  (*See id.* at 222-23.)  This description fits the May

---

[3] Poole testified in a deposition conducted over two days, on March 30-31, 2015.  The most complete, unredacted portions of the transcript from this deposition are located in the record at ECF Nos. 148, 198-2. The Court will identify this transcript as  "2015 Poole Dep." to distinguish it from the transcript of a deposition in which Poole testified in 2013, in connection with a different case.  (*See* 2013 Poole Dep., ECF No. 198-7.)

2013 call received by Visser.  Visser received a call from an individual offering a free cruise, and then the caller transferred Plaintiff to CCL after Visser expressed interest in the offer.[4]  Poole's approval of a script used by Vatara does not in any way suggest that Lambert initiated, or was involved in, the May 2013 telephone call.

Poole also testified about the October 2013 telephone call to Visser.  After listening to a recording of the call, she stated that she was not familiar with the script used in that call.  (2015 Poole Dep. 229.)   No evidence indicates that Lambert approved the script for this call.  Accordingly, there are no facts or evidence indicating that Lambert approved scripts that were used in the particular telephone calls to Visser.  There is also no evidence that Lambert was involved in the calls to the other Plaintiffs.

Finally, Plaintiffs provide emails indicating that Lambert received statistics about CCL's telephone marketing, received notice about possible violations of the TCPA by CCL, and made a change to a call script for a political survey conducted by CCL.  (*See* Emails, ECF No. 198-1, PageID.4843-4846.)  All of these emails are from June 7, 2012, and earlier.  They predate the allegations of the complaint by almost a year, and have no apparent connection to this case.  They do not connect Lambert to the telephone calls received by Plaintiffs.

In summary, Plaintiffs' evidence does not provide any support for their contention that Lambert caused, or was otherwise involved in, the telephone calls at issue in this case.  At most, Plaintiffs' evidence indicates that Lambert had some control over, and awareness of, CCL's marketing practices.  But it does not follow that Lambert is therefore subject to the personal jurisdiction of any state reached by the company's marketing.  Nor does it follow that Lambert

---

[4] Likewise, CCL contends that "Time Solutions/Vatara Marketing" transferred the May 2013 call to CCL.  (*See* CCL's Answers to Interrogs., ECF No. 195-1, PageID.4173.)

was involved in the particular conduct that forms the basis for Plaintiffs' claims. The evidence of any involvement by Lambert, even when construed in the light most favorable to Plaintiffs, is far too attenuated for this Court to exercise personal jurisdiction over him.

### B. Failure to State a Claim

Even if the Court were to find that exercising jurisdiction over Lambert is appropriate, the Court would dismiss the claims against him for failure to state a claim. Plaintiffs assert claims under the TCPA and the MHSSA, but Plaintiffs have not alleged sufficient facts to state a plausible claim against Defendant Lambert.

At the outset, the Court notes that Defendant Lambert has asked the Court to strike portions of Plaintiffs' response from the record, because the response cites material outside the complaint, including affidavits and deposition testimony. When considering a motion to dismiss for failure to state a claim, the Court generally does not consider matters outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). On the other hand, the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id*. (emphasis added).

The Court will not strike any portion of Plaintiffs' response because the additional materials referenced therein are relevant to Defendant's request for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. Nevertheless, the Court will exclude those materials for purposes of evaluating whether the complaint states a claim, as contemplated by Rule 12(d). For the same

reason, the Court will also exclude the materials attached to Defendant's motion, and will consider only the complaint itself to determine whether its allegations are sufficient.

The TCPA and the MHSSA share a common element:  making a telephone call.  The TCPA makes it unlawful for a person to do one of the following: (1) make a telephone call to a cellular telephone number using an "automatic telephone dialing system or an artificial or prerecorded voice"; or (2) initiate a telephone call to "any residential telephone line using an artificial or prerecorded voice to deliver a message[.]"  47 U.S.C. § 227(b)(1)(A)(iii), 227(b)(1)(B).  The MHSSA prohibits making a residential telephone solicitation "that consists in whole or in part of a recorded message."  Mich. Comp. Laws § 445.111a(1).  In addition, the MHSSA requires any person making a telephone solicitation to state, at the beginning of the solicitation, "his or her name and the full name of the organization or other person on whose behalf the call was initiated." Mich. Comp. Laws § 445.111b(1).

Plaintiffs have not plausibly alleged that Defendant Lambert was involved in, or was otherwise responsible for, the telephone calls to Plaintiffs.  The Court previously made the following statements about Defendant Mitchell that apply with equal force to Defendant Lambert:

> The complaint includes no factual basis for concluding that Mitchell caused the telephone calls to be made. . . .  The fact that CCL, or an agent of CCL, made unsolicited telephone calls does not require the inference that Mitchell caused or directed those telephone calls to be made.  Pleading facts that are consistent with that inference is insufficient. . . .

(4/4/2014 Op. & Order 32, ECF No. 21.)  Likewise, there is no factual basis in the complaint for making a plausible inference that Defendant Lambert caused or directed the telephone calls at issue.  Indeed, even with the benefit of the additional materials referenced in Plaintiffs' response, Plaintiffs would not state a claim.  For the reasons discussed in the previous section regarding personal jurisdiction, the additional materials do not draw a plausible connection between Lambert and the particular telephone calls to Plaintiffs.  Any connection is based on speculation only.

14

Plaintiffs compare this case to others in which courts found that the employee of a corporation could be held personally liable for a TCPA violation; however, the cases cited by Plaintiffs reinforce this Court's conclusion that Plaintiffs fail to state a claim against Lambert.  In all of the cited cases, the allegations or evidence demonstrated the employee's personal involvement in the telephone call or fax giving rise to the TCPA violation.  *See, e.g.*, *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *18 (N.D. Ill. Feb. 11, 2014) (employee "was the main contact at [the company] for B2B (a.k.a. Marketing Research Center), he drafted the fax himself, he provided the fax to B2B, and he instructed another employee to send B2B payment for the fax"); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4074620, at *8 (W.D. Mich. June 21, 2012) (employee purportedly directed the creation of a fax recipient list, directed and supervised the individuals or entity that sent the fax, approved the form of the fax, determined the number and frequency of fax transmissions, and approved or paid for the fax transmissions); *Maryland v. Universal Elections, Inc.*, 787 F. Supp. 2d 408, 415 (D. Md. 2011) (employees "record[ed] and upload[ed] the Election Day message, and direct[ed] Robodial to broadcast it"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F. Supp. 2d 1316, 1321 (D. Wyo. 2011) (employee was "directly involved in the collections efforts"; "he supervised collection activities and his voice appeared in the prerecorded messages" in the telephone calls); *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2010 WL 3526691, at *3 (N.D. Ill. Sept. 2, 2010) (employee "admittedly created the majority of the unsolicited facsimile advertisements, corresponded directly with Business to Business, and was in possession of the names and fax numbers of some, if not all, of the recipients"); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (employees "controlled all of [the company's] day-to-day operations" and "had direct, personal involvement in and ultimate control over every aspect of [the

company's] wrongful conduct that violated the TCPA, and/or [they] . . . authorized this conduct"). In contrast, Plaintiffs have not alleged similar facts from which to reasonably infer personal involvement by Lambert in the telephone calls at issue.  Accordingly, Plaintiffs fail to state a claim against him.

In short, the Court will dismiss Defendant Lambert because the Court lacks personal jurisdiction over him and, alternatively, the third amended complaint fails to state a claim against him.[5]

## IV.  Defendant CTH

According to the complaint, CTH is a Florida corporation with its principal place of business in Florida.  Plaintiffs allege that CTH does business in Michigan (selling Caribbean cruises), solicits customers in Michigan, and that it "made, or caused to be made" the telephone calls giving rise to this case.  (3d Am. Compl. ¶ 5.)  Plaintiffs also allege that CCL and CTH are "affiliated with one another" and share "some common ownership and control."  (*Id.* ¶¶ 34, 35.) CTH argues that the Court lacks personal jurisdiction over it and that the complaint fails to state a claim against it.

### A.  Personal Jurisdiction

Plaintiffs do not argue that the Court can exercise general jurisdiction over CTH; thus, the Court will examine whether Plaintiffs have demonstrated a *prima facie* case for limited jurisdiction.

Michigan's long-arm statute provides for limited personal jurisdiction over corporations in the following circumstances:

---

[5] Defendant Lambert also contends that Plaintiffs have not properly served the complaint on him.  Because the Court has determined that Lambert is subject to dismissal for other reasons, the Court does not, and need not, decide whether Plaintiffs have properly served the complaint.

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715.

Plaintiffs rely on subsections (1), (2) and (5), contending that CTH has transacted business in Michigan and has contracted for services to be performed in Michigan by contracting for telephone calls to be made to Michigan telephone numbers.  In addition, the telephone calls to Plaintiffs allegedly caused harm to individuals in Michigan.

In support of CTH's motion, Defendant Lambert, CTH's director since 2001, avers that CTH is "merely a holding a company that has never had any business operations or employees." (Lambert Decl., ECF No. 129-1, PageID.2654.)  It does not solicit customers or sell goods or services.  It has never transacted business in Michigan or performed any acts with consequences in Michigan.  It has never owned or used any real or tangible assets in Michigan.  It is a "twice-removed parent holding company to CCL that keeps its own separate books and records, has different officers and directors, and does not exert any control over CCL's daily affairs." (*Id.* at PageID.2654-2655.)

17

In response to CTH's motion and affidavit, Plaintiffs rely primarily on the allegations of the complaint.  However, when confronted with CTH's affidavit, it is not enough for Plaintiffs to "rest on [their] pleadings."  *Serras*, 875 F.2d at 1214.  Plaintiffs have the burden of demonstrating jurisdiction over CTH; in making their case, they cannot controvert Defendant's sworn affidavit with only the allegations in the complaint.

Plaintiffs also rely on evidence that they obtained through discovery, but none of that evidence, even when construed in a light most favorable to Plaintiffs, provides support for a *prima facie* case.  For instance, Plaintiffs cite deposition testimony by two employees of CCL, Donna Higgins and Jennifer Poole.  (*See* Higgins Dep., ECF No. 151-6; 2015 Poole Dep., ECF Nos. 148, 198-2.)  But nowhere in those deposition transcripts do Higgins or Poole even mention CTH.  Poole testified about Consolidated Travel, Inc. (2015 Poole Dep. 80), which signed an agreement with lead broker Todd West, LLC (*see* ECF No. 132-5).  That agreement apparently led to the marketing campaign by Vatara which, in turn, gave rise to the May 2013 call to Plaintiff Visser.  (*See* CCL's Answers to Interrogs., ECF No. 132-4, PageID.2804.)  However, Plaintiffs have sued CTH, not Consolidated Travel, Inc.  Plaintiffs do not allege any connection between Consolidated Travel, Inc. and CTH.  Instead, Plaintiffs simply conflate these two entities, without any explanation for doing so.  The fact that these two entities share similar names and possibly a common officer (Daniel Lambert) is not enough to infer that they are one and the same, or that actions taken by one can be attributed to the other.

Plaintiffs also allege that CTH is "affiliated" with CCL, which is consistent with Lambert's affidavit.  He avers that CTH is a twice-removed parent company over CCL.  But even assuming that the Court has jurisdiction over CCL, CTH's corporate affiliation with CCL is not sufficient, on its own, for the Court to exercise jurisdiction over CTH.  "'Michigan law presumes that, absent

some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities.'" *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850 (6th Cir. 2017) (quoting *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995)).

Plaintiffs argue that they have alleged sufficient facts to demonstrate an "alter-ego" theory of jurisdiction. In other words, Plaintiffs contend that CTH is subject to personal jurisdiction and liability to the same extent as CCL because CTH is the alter-ego of CCL. Because Plaintiffs have asserted a claim under federal law and a claim under state law, the Court must examine the "alter-ego" theory of jurisdiction though the lenses of both state and federal common law. *See Anwar*, 876 F.3d at 848 ("[Plaintiff] has made both federal and state law claims, therefore this court must look to federal law and Michigan law regarding alter-ego personal jurisdiction to assess her claims.").

For claims arising under federal law, courts in this circuit apply a federal "alter-ego theory of personal jurisdiction to parent-subsidiary relationships." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Under this theory, "'a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Id.* (quoting *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003)).

Federal courts have considered the following factors when applying the alter-ego test for personal jurisdiction:

> (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.

*Id.*; *accord Anwar*, 876 F.3d at 849.  In short, Plaintiffs must demonstrate "'unity of interest and ownership' that goes beyond mere ownership and shared management personnel." *Anwar*, 876 F.3d at 849 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)).  Plaintiffs have failed to do so.

The only allegations in the complaint pertaining to "unity of interest and ownership" are Plaintiffs' assertions that (1) CTH and CCL "share some common ownership and control," and (2) Daniel Lambert has "an ownership interest" in both CTH and CCL.  (3d Am. Compl. ¶¶ 35-36.)  Notably, Plaintiffs do not allege that CTH and CCL share the same employees and officers (other than the possible exception of Daniel Lambert), share the same address and office facilities,[6] use the same assets, maintain common financial books and records, or exert control over the daily affairs of the other.  Furthermore, Plaintiffs provide no evidence challenging Lambert's sworn assertions that CTH does not have any employees and does not engage in any business at all.

In summary, Plaintiffs have not offered anything to demonstrate a relationship between CTH and CCL that "goes beyond mere ownership and shared management personnel." *Anwar*, 876 F.3d at 849.  Accordingly, Plaintiffs have not satisfied the alter-ego theory of personal jurisdiction under federal law.  *Cf. Bakov v. Consol. Travel Holdings Grp., Inc.*, No. 15 C 2980, 2016 WL 4146471, at *2 (N.D. Ill. Aug. 4, 2016) (rejecting alter-ego theory of personal jurisdiction as between CTH and CCL's "successor," Consolidated World Travel, Inc., for similar reasons).

Applying state law leads to the same result.  Under Michigan law, to exercise personal jurisdiction over a parent corporation (i.e., CTH) for the tortious acts of its subsidiary (i.e., CCL),

---

[6] Plaintiffs contend in their brief that CTH shares an address with CCL, but the documents offered to support this assertion refer to "Consolidated World Travel, Inc." rather than CTH.  (*See* ECF No. 132-9.)  Plaintiffs do not explain the reason for this discrepancy.

Plaintiffs would have to make a *prima facie* case for piercing the corporate veil.  *See Anwar*, 876 F.3d at 851.

> The factors courts consider under Michigan law are similar to those under federal law, including shared office space, shared board membership, interconnected revenue and capital, support from the parent for the subsidiary in the event of undercapitalization, payroll management, direction of policy and decisions, and shared projects that the parent considers to be its own.

*Id.*  Plaintiffs have not alleged facts supporting any of these factors.  Moreover, Plaintiffs have not provided any evidence to challenge CTH's evidence that CTH conducts no business in Michigan or elsewhere and has no contacts with that state.  Accordingly, there is no basis for exercising personal jurisdiction over CTH.

In summary, the Court cannot exercise personal jurisdiction over CTH because the uncontroverted evidence presented by CTH indicates that it has no contacts with Michigan whatsoever.  Furthermore, Plaintiffs' alter-ego theory of jurisdiction is unsupported.  Therefore, the Court will grant CTH's motion to dismiss for lack of personal jurisdiction.[7]

## V.  Defendant CCL

Defendant CCL again argues that Plaintiffs' complaint fails to state a claim against it.  Plaintiffs have filed a response supported by materials that are not part of the complaint.[8]  Those materials are either irrelevant or not properly before the Court on a motion to dismiss.  Rather than convert the motion into one for summary judgment, the Court will exclude those materials and consider only the complaint itself.

---

[7] The Court expresses no opinion about whether the third amended complaint states a claim against CTH.

[8] The materials include the following:  CCL's answers to interrogatories (ECF No. 132-1); a complaint against CCL by the FTC in an unrelated case in Florida (ECF No. 132-2); a permanent injunction against CCL in the Florida case (ECF No. 132-3); an agreement between Consolidated Travel, Inc. and Todd West, LLC (ECF No. 132-5); deposition transcripts (ECF Nos. 132-6, 132-7, 132-8); and corporate registration records and documents for Consolidated World Travel, Inc. (ECF No. 132-9).

When CCL moved to dismiss the first amended complaint for failure to state a claim, the Court denied CCL's motion.  Although the allegations about CCL were "little more than a formulaic recitation of the elements," they were sufficient to "put Defendant[] on notice of the claim[s] asserted."  (4/4/2014 Op. & Order 27.)

Plaintiffs' third amended complaint is substantially the same as the first amended complaint.  The third amended complaint has added new plaintiffs, which means that additional telephone calls to those new plaintiffs are now at issue, but virtually all of the allegations from the first amended complaint have carried over to the most recent version.

CCL contends that the third amended complaint does not allege facts supporting direct or vicarious liability for a TCPA violation.  The Court disagrees.  The complaint alleges that CCL made or caused the telephone calls to Plaintiffs.  Although Plaintiffs' allegations are scant and borderline formulaic, they are adequate to survive dismissal.  To the extent CCL disputes its role in the calls, that dispute is more properly raised in a motion for summary judgment or at trial.

In addition, CCL argues that the complaint does not allege facts to support a MHSSA violation because there is no allegation that CCL made telephone calls to residential telephone subscribers.  However, Plaintiffs allege that CCL or its agent called their cellular telephones.  (3d Am. Compl. ¶ 23.)  And when explaining the basis for the MHSSA claim, the complaint quotes Mich. Comp. Laws § 444.111b(1), which requires "a person making a telephone solicitation to a *residential telephone subscriber* [to] state his or her name . . . ."  (3d Am. Compl. ¶ 72 (emphasis added).)  Taken together, these allegations can be read to state that Plaintiffs received their calls on cellular telephones that they used as residential telephones.  Although Plaintiffs' allegations border on vague and conclusory assertions rather than statements of fact, they are minimally adequate to state a plausible claim for relief.

22

The Court disagrees with CCL's contention that the MHSSA does not apply to calls made to a cellular telephone.  When interpreting this statute, the Court begins with its text.  *See McCormick v. Carrier*, 795 N.W.2d 517, 524 (Mich. 2010).  The text of the MHSSA indicates that its primary focus is on the *place* where solicitations are received, not the *type of service* used to make them.  Section 111a of the MHSSA puts restrictions on "home solicitation sales," which are solicitations by telephone, in writing, or in person, and "received by the buyer *at a residence of the buyer*[.]"  Mich. Comp. Laws § 445.111(a) (emphasis added).  The statute excludes solicitations received at other locations, such as "a fixed location of a business establishment[.]"  Mich. Comp. Laws § 445.111(a)(iv).  The statute does not distinguish solicitations over a cellular telephone service from solicitations over a wireline service.  If an individual receives a sales call at the individual's residence, that call satisfies the definition of a home solicitation sale.

Section 111b of the MHSSA imposes certain requirements on "telephone solicitations" to a "residential telephone subscriber."  *See* Mich. Comp. Laws § 445.111b(1).  A residential telephone subscriber is a "a person residing in [Michigan] who has residential telephone service."  Mich. Comp. Laws § 445.111(l).  No language in the statute limits "residential telephone service" to service over a wire, as opposed to service over a cellular network.

In addition, a telephone solicitation is defined as "any voice communication over a telephone for the purpose of encouraging the recipient of the call to purchase, rent, or invest in goods or services . . . ."  Mich. Comp. Laws § 444.111(m).  Clearly, a telephone solicitation to a cellular telephone involves a "voice communication over a telephone."  Thus, CCL's argument is not supported by the text of the statute.

Furthermore, CCL's argument is inconsistent with the purpose of the MHSSA, which "[is] to protect consumers from intrusions into their homes by door-to-door and telephone solicitors,"

where the "consumer has not yet prepared himself or herself for the negotiation process" and is "in a uniquely vulnerable position[,] susceptible to an unwanted sale of consumer goods." *Brown v. Jacob*, 454 N.W.2d 226, 395 (Mich. Ct. App. 1990) (Griffin, J., dissenting), *rev'd for reasons stated in the dissent*, 476 N.W.2d 156 (Mich. 1991).  An individual who receives a solicitation to his cellular telephone, while located at his residence, is just as vulnerable as an individual who receives a solicitation to his home phone over a landline.  Accordingly, both individuals can satisfy all the requirements for bringing a claim under the MHSSA.

Next, CCL reiterates its argument that the complaint lacks sufficient detail to distinguish the roles of the named defendants because the allegations tend to lump all of the defendants together.  The Court rejected this argument as a basis for dismissing the first amended complaint. (*See* 4/4/2014 Op. & Order 24.)  Indeed, Plaintiffs are permitted to allege alternative theories of liability, and that is essentially what they have done here.  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").  For instance, alleging that CCL and CTH, collectively, made or caused the telephone calls is arguably equivalent to alleging that either CCL or CTH, or both, made the telephone calls or caused them to be made through an agent.  There are many different scenarios in which one or more of these defendants might be directly or vicariously liable based on their respective roles.  Plaintiffs are not obligated to allege only one theory of liability in the complaint.

Moreover, as far as notice to Defendant is concerned, the complaint's failure to distinguish CCL's role from CTH's role or Lambert's role is less of an issue now that CCL is the only defendant remaining in the case to which the allegations could apply.

In short, the Court discerns no reason to depart from the logic of its earlier opinion that Plaintiffs' complaint adequately states TCPA and MHSSA claims against CCL.  The fact that Plaintiffs were able to conduct discovery before filing their third amended complaint is irrelevant. The pleading standard in Rule 8 does not change as the case progresses, and absent an order from this Court, Plaintiffs are not required to supplement the complaint to provide more detail. Accordingly, CCL's motion will be denied.

## VI.  Conclusion

For the reasons herein, the Court will deny Defendant Lambert's motion to strike but will grant Defendant Lambert's motion to dismiss because the Court lacks personal jurisdiction over him and, alternatively, the third amended complaint fails to state a claim against him.  The Court will grant CTH's motion to dismiss because the Court lacks personal jurisdiction over CTH.  The Court will deny CCL's motion to dismiss.

The Court will enter an order consistent with this Opinion.


Dated:   January 27, 2020                          /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge