UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD VISSER, *et al.*,

    Plaintiffs,

v.

CARIBBEAN CRUISE LINE, INC., *et al.*,

    Defendants.
                               /

File No. 1:13-CV-1029

HON. PAUL L. MALONEY

## **OPINION**

This is an action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* and the Michigan Home Solicitation Sales Act (MHSSA), Mich. Comp. Laws § 445.111 *et seq.* Before the Court is Plaintiff Donald Visser's motion to certify a class action (ECF No. 145). Defendant Caribbean Cruise Line, Inc. asks the Court to deny Visser's motion (ECF No. 178).

### **I. Background**

Plaintiff Donald Visser is a Michigan resident. The only remaining defendant in this action is Caribbean Cruise Line, Inc. ("CCL"), a Florida corporation. CCL sells Caribbean cruises.

Visser alleges that he received a call to his cellular telephone on May 16, 2013, "by, on behalf of, or for the benefit of Defendant[.]" (3d Am. Compl. ¶ 23, ECF No. 110.) CCL or its agent allegedly made the call using an "automatic telephone dialing system" and an "artificial or prerecorded voice." (*Id.* ¶¶ 27-28.)

When Visser picked up the call, he heard a pre-recorded message, though he does not remember the content of the message. (Visser Dep. 91, ECF No. 178-1.) 15 or 20 seconds into the call, an individual greeted Visser and identified himself as "Joey from Photo Travel."

(5/16/2013 Call Tr., ECF No. 8-5, PageID.191.)  The caller told Visser that "at some point in the last 6 months, you entered your number into a draw for a free all-inclusive cruise to the Caribbean and you actually won."  (*Id.*)  The caller stated that Visser had entered his phone number into a website called "leadpile.com," but Visser did not think he had done that.  (*Id.*, PageID.191-192.)  Visser had questions about the cruise, so the caller transferred him to an "agent" who responded as "Caribbean Cruise Line."  (*Id.*, PageID.193.)  The agent at Caribbean Cruise Line answered Visser's questions and provided details about the cruise.

The parties apparently agree that CCL received Visser's transferred call from a "lead generator" called Vatara Marketing and/or Time Solutions.  (Poole Dep. 31-32, 240-41, ECF No. 148.)  According to CCL employees, CCL worked with Vatara from 2012 to 2013.  (*Id.* at 47-48.)  CCL permitted Vatara to advertise CCL's cruise offer on the Internet, along with a toll-free phone number.  Interested customers could call this toll-free phone number to reach Vatara.  Vatara would then ask the customer several qualifying questions before transferring the call to CCL.  (*Id.* at 252.)  As it did with other lead generators, CCL assigned Vatara a unique phone number to track Vatara's marketing campaign.  (*Id.* at 59.)  CCL assigned the number 877-210-8866 to Vatara, who would use this number to transfer calls to CCL's call center.  (Poole Decl. ¶¶ 4, 6, ECF No. 179.)

Visser claims that the call he received violated the TCPA and the MHSSA.  The TCPA makes it unlawful for a person to do one of the following: (1) make a telephone call to a cellular telephone number using an "automatic telephone dialing system or an artificial or prerecorded voice"; or (2) initiate a telephone call to "any residential telephone line using an artificial or prerecorded voice to deliver a message[.]"  47 U.S.C. § 227(b)(1)(A)(iii), 227(b)(1)(B).  The MHSSA prohibits making a residential telephone solicitation "that consists in whole or in part of a recorded message."  Mich. Comp. Laws § 445.111a(1).  In addition, the MHSSA requires any

2

person making a telephone solicitation to state, at the beginning of the solicitation, "his or her name and the full name of the organization or other person on whose behalf the call was initiated." Mich. Comp. Laws § 445.111b(1).

Visser claims that the call he received violated 47 U.S.C. § 227(b)(1)(A)(iii) and Mich. Comp. Laws § 445.111a(1), because it began with a recording and the caller used an automatic dialer to place the call. In addition, the caller allegedly failed to state "the full name of the organization or other person on whose behalf the call was initiated," in violation of Mich. Comp. Laws § 445.111b(1).

Visser claims that CCL is liable because it "made" the call or "caused [it] to be made." (3d Am. Compl. ¶ 57.) Visser believes that other individuals received similar calls as part of a marketing campaign conducted by CCL from February 25 to September 3, 2013. Consequently, he asks the Court to certify a part of this case as a class action. Specifically, he asks the Court to certify the following class:

> All persons residing in any of the United States who (1) received one or more calls that were made by, on behalf of, or for the benefit of, or otherwise relate to the Defendants; (2) which either: (a) delivered a message using either or both an automatic telephone dialing system or an artificial or prerecorded voice; or (b) either failed to state Defendant's identity, or failed to state Defendant's telephone number or address; (3) without the prior express consent of the called party, and without an established business relationship as substantiated by Defendants' records; (4) between February 25, 2013 and September 3, 2013 ("Class Period"); (5) identified by the CCL's marketing campaign telephone number 877-210-8866 (6) whose (i) telephone number appears in Defendants' records of those calls and/or the records of their third party telephone carriers or the third party telephone carriers of their call centers and who submit an affidavit or claim form if necessary to describe the content of the call (the "Class").

(Mot. to Certify Class, ECF No. 145.) In addition, he seeks to certify the following "subclass":

> All persons who are part of the Class during the Class Period and resided in the State of Michigan during the Class Period to whom a telephone solicitation was made that: (1) consisted in whole or in part of a recorded message; or (2) failed to state at the beginning of the telephone solicitation the caller's name or the full name of the organization or other person on whose behalf the call was made; or (3) stated

3

that the called party won a prize promotion, when in fact a purchase or payment was necessary to obtain the prize; and (4) who submit an affidavit or claim form, if necessary, to describe the content of the call (the "Michigan Subclass").

(*Id.*)

## II. Standard

"In order to obtain class certification, [a] plaintiff must . . . satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). In addition, Rule 23(b)(3), the rule under which Plaintiff seeks class certification, requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods" of adjudication. Fed. R. Civ. P. 23(b)(3). Finally, the class must be sufficiently ascertainable. In other words, "'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997)).

"The party seeking class certification has the burden to prove the Rule 23 certification requirements." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "[A] judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings. . . ." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976). However, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Such compliance must be checked through a "'rigorous analysis.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Ordinarily, this means the class determination should be predicated on evidence the parties present concerning the maintainability of the class action."

*Young*, 693 F.3d at 537. "[T]he district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of [a] class motion without resolving factual and legal issues." *Id.*

### III. Analysis

The Court has concerns about Plaintiff's ability to meet several requirements for class certification.

**A. Class Definition**

Defendant contends that the class is not sufficiently ascertainable. "[A] class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young*, 693 F.3d at 538. "[T]he court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Id.* (quoting Moore's Federal Practice § 23.21[3]).

A significant part of Visser's proposed class definition is not based on objective criteria. For instance, the definition begins by referring to individuals who received calls that "were made by, on behalf of, or for the benefit of, or otherwise relate to the Defendant[.]" (ECF No. 145.) It is not at all clear what it would mean for a call to be made "for the benefit of" Defendant. Nor is it clear how or why the Court would ascertain whether a call is "related" to Defendant.

On the other hand, the class is limited to calls "identified by the CCL's marketing campaign telephone number 877-210-8866," from the date February 25 to September 3, 2013. (*Id.*) In other words, the class apparently includes only those individuals whose calls Vatara transferred to CCL using the 8866 number. In theory, the Court could begin to ascertain the class members by reference to CCL's or Vatara's telephone records, which presumably contain the phone numbers of the individuals who spoke with CCL after their contact with Vatara. Such records might allow the Court to identify some class members, but the Court notes that Visser has not provided those

5

records at this time. Moreover, he has not indicated how the Court would actually go about identifying individuals from phone numbers, and for purposes of the subclass, determining which of those individuals resided in Michigan when they allegedly received the call offering CCL's cruise.

The rest of the class definition specifies criteria that would be difficult to administer. That criteria includes calls that were made using an automatic dialer, *or* that included a prerecorded message, *or* that failed to state the Defendant's name and address. Each of these requirements is objective, but presenting them as alternative characteristics of class members undermines Visser's argument for certifying a class action. It suggests uncertainty about the nature of Defendant's (or Vatara's) actual conduct and, thus, uncertainty about the very existence of a viable class of claimants with common claims.

Relatedly, Defendant asserts that the proposed class definition creates an impermissible "fail-safe" class, which is one that "cannot be defined until the case is resolved on its merits." *Young*, 693 F.3d at 538. "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). This result is "prohibited in large part because it would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation." *Id.* The class definition in this case would lead to that sort of result. The definition starts with a somewhat broad, potentially ascertainable group of individuals, but then it includes the criteria mentioned in the previous paragraph, which essentially exclude from the class all those who would not have a viable claim under the TCPA or the MHSSA. Furthermore, the proposed class includes only those who submit an affidavit or form "if

6

necessary" to describe the contents of the call. With such a narrow definition, the Court would not be able to ascertain the class members until the case is resolved on the merits. Consequently, for all the foregoing reasons, Plaintiff has not shown that the proposed class is sufficiently ascertainable.

### B. Numerosity

Rule 23(a)(1) requires a class that is "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

Visser contends that the class includes over 92,000 people to whom "robocall messages were delivered, listened to by the called party, transferred to employees at Defendant['s] call centers and resulted in presentations being made to people who had been called." (Pl.'s Br. 16, ECF No. 151.) In support of this number, Visser points to an exhibit which indicates that CCL received 92,378 calls through the 8866 number in the time period from February 25 to September 3, 2013. (ECF No. 151-5, PageID.3166.) However, the only thing this exhibit demonstrates is that Vatara transferred a large number of calls to CCL. It does not indicate anything about who initiated the calls (i.e., Vatara or the customer), the content of those calls, or the identity of the putative class member on the other side of the call. It also does not indicate whether the caller used an auto-dialer or a recorded message, or failed to state his/her name at the beginning of a sales call. This is Plaintiff's only evidence in support of numerosity, but it fails to show that anyone else received a call like the one that Visser received.

Indeed, other evidence suggests that the CCL's marketing campaign with Vatara generally did not violate the TCPA or the MHSSA. The person calling Visser contended that Visser had entered his phone number on a website called leadpile.com. In addition, CCL's representative stated that CCL did not authorize Vatara to make outbound calls; instead, CCL expected that

7

Vatara would post a number on a website for customers to call. (Poole Dep. 42-43; Poole Decl. ¶ 6.) If the customer initiated or consented to the call (e.g., by dialing a phone number in a web advertisement, or entering their information on a website), then there was no violation of the TCPA or the MHSSA. The TCPA prohibits auto-dialed and prerecorded calls only without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Similarly, the MHSSA does not apply to telephone solicitations with a person who has given "express invitation or permission prior to the voice communication." Mich. Comp. Laws § 445.111(m)(i).

There is a conspicuous hole in the evidence offered by Visser to support his motion. Vatara apparently initiated the May 2013 telephone call to Visser, yet Visser offers no evidence about Vatara's conduct or practices, other than the fact that it transferred over 90,000 calls to CCL during a particular timeframe. Visser points to evidence of other marketing campaigns by CCL that may have violated the TCPA, and to other calls received by other individuals outside the relevant time period, but he does not explain how any of that evidence supports his particular claims. He does not contend that any of those other calls and campaigns involved Vatara or the 8866 number.

In short, Visser needs more evidence to demonstrate that a sufficiently numerous class exists. As it stands, his evidence does not permit a reasonable inference that any of the calls transferred from Vatara to CCL arose from calls like the one that he received in May 2013. *Cf. Midtown Valuation, Inc. v. Capital Alliance Grp.*, No. 4 CV 1586(FB)(CLP), 2014 WL 5165085, at *9 (E.D.N.Y. Aug. 11, 2015) (finding numerosity requirement was not met in TCPA case where the evidence merely indicated that many individuals called a toll-free phone number; that evidence did not permit a reasonable inference that those individuals received the phone number from an unsolicited fax). Thus, Plaintiff has failed to demonstrate the existence of a class so numerous that joinder is impracticable.

### C. Typicality, Predominance

At this point, without more evidence of the existence of other class members, or of a uniform course of conduct by the entity that apparently initiated the calls at issue (i.e., Vatara Marketing), the Court cannot conclude that Plaintiff can satisfy other prerequisites for bringing a class action, such as typicality and predominance. In other words, the Court cannot discern whether Visser's claim is typical of the class in that it arises "from the same event or practice or course of conduct that gives rise to the claims of other class members." *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. Plaintiff simply asserts, without evidence, that "[e]ach [c]lass member received the same pre-recorded phone call." (Pl.'s Br. 19.) For similar reasons, the Court cannot discern whether issues subject to generalized proof applicable to the class would predominate over issues subject to individualized proof. *See* Fed. R. Civ. P. 23(b)(3). Consequently, Plaintiff has not met his burden of proving the requirements for class certification.

## VI. Conclusion

The Court will deny Visser's request for class certification because he has not demonstrated several requirements for obtaining it. The Court has not addressed all the concerns raised by Defendant, but the concerns discussed herein are sufficient to deny Plaintiff's motion.

The Court will enter an order consistent with this Opinion.

Dated:   January 27, 2020   /s/ Paul L. Maloney
                             Paul L. Maloney
                             United States District Judge